# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * | | |
| MARI BOURCHE, | * | |
| As Personal Representative of the | * | No. 15-232V |
| Estate of JOSEPH BOURCHE, | * | Special Master Christian J. Moran |
| | * | |
| Petitioner, | * | Filed:  June 3, 2016 |
| | * | |
| v. | * | Attorneys' fees; interim award not |
| | * | appropriate |
| SECRETARY OF HEALTH | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * * | | |

Andrew D. Downing, Van Cott & Talamante, PLLC, Phoenix, AZ, for petitioner;
Sarah C. Duncan, United States Dep't of Justice, Washington, D.C., for respondent.

**PUBLISHED DECISION DENYING
INTERIM ATTORNEYS' FEES AND COSTS[1]**

In a petition filed on March 6, 2015, Joseph Bourche alleged that a dose of the hepatitis B vaccination harmed him.  Mr. Bourche sought compensation from the National Childhood Vaccine Injury Compensation Program, found at 42 U.S.C. § 300aa−10 through 34 (2012).

While the question of whether the vaccination harmed Mr. Bourche remains pending, a motion requesting an award of attorneys' fees and costs on an interim basis was filed.  Pet'r's Fee Appl'n, filed Nov. 13, 2015.  The Secretary opposed this request.  Resp't's Resp., filed Dec. 3, 2015.  For the reasons explained below,

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website.  Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4).  Any redactions ordered by the special master will appear in the document posted on the website.

an award of attorneys' fees and costs is not appropriate at this time. Therefore, the petitioner's request is DENIED.

## I.   Brief Factual and Procedural History

In early 2014, Mr. Bourche was 55 years old and owned an automobile repair shop. Exhibit 1 (affidavit of Mr. Bourche).[2] He had suffered from kidney disease and, by 2014, was receiving hemodialysis. Mr. Bourche also suffered from cardiomyopathy and advanced congestive heart failure. The implantation of a pacemaker in October 2013 had improved Mr. Bourche's cardiac symptoms.

On April 23, 2014, Mr. Bourche received the hepatitis B vaccine. In his affidavit, Mr. Bourche asserted that on the day of the vaccination, he became very itchy all over his body. Following the vaccination, Mr. Bourche developed blisters in his mouth for which he was treated in a hospital.

According to timesheets submitted by Mr. Bourche's attorney, Mr. Bourche first contacted Mr. Downing on August 26, 2014. Mr. Downing's office collected medical records, drafted an affidavit, and prepared a petition, which the Clerk's Office filed on March 6, 2015. The petition was filed 317 days after vaccination. On behalf of Mr. Bourche, Mr. Downing filed medical records.

On June 25, 2015, the Secretary filed her report in which she assessed those records. The Secretary's opinion was that Mr. Bourche had not established that the hepatitis B vaccination harmed him. The Secretary noted that Mr. Bourche had not submitted an expert report supporting his allegations.

Mr. Downing engaged a rheumatologist, Thomas Zizic, to assist with Mr. Bourche's claim on July 13, 2015. Timesheets at 50.[3] Dr. Zizic reviewed Mr. Bourche's medical records, read medical articles, and drafted a report. Dr. Zizic's invoice shows that he spent 119.5 hours in this process. Timesheets at 54-57. Mr. Bourche filed Dr. Zizic's report as exhibit 15 on October 9, 2015. Dr. Zizic was ordered to clarify certain aspects of his opinions. Order, issued Oct. 19, 2015.

---

[2] Mr. Bourche's affidavit is consistent with the medical records created contemporaneously with the events they describe. Because of the affidavit's succinctness, and because the outcome of the pending motion does not depend upon any details of Mr. Bourche's medical history, this decision cites primarily to Mr. Bourche's affidavit.

[3] The timesheets are found as exhibit A to the petitioner's November 13, 2015 fee application.

While Dr. Zizic was preparing his first supplemental report, Mr. Bourche filed a motion requesting an award of attorneys' fees and costs on an interim basis. Mr. Bourche sought compensation for Mr. Downing's work, work other people in Mr. Downing's law firm performed, and for Dr. Zizic's work.  Mr. Bourche argued that he was eligible for an award of attorneys' fees and costs on an interim basis because he satisfied the factors listed in Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008).  Pet'r's Fee Appl'n at 4.

The Secretary opposed the request for an award on an interim basis because Mr. Bourche did not meet the Avera factors.  The Secretary also argued that the amount sought in attorneys' fees and costs was excessive.  Resp't's Resp., filed Dec. 3, 2015.

Mr. Bourche filed a reply addressing the Secretary's arguments.  Mr. Bourche maintained that an interim award remained appropriate.  Mr. Bourche also generally defended the amounts the different people had requested as reasonable. Pet'r's Reply, filed Dec. 14, 2015.

After Mr. Bourche submitted the reply brief, the case continued to develop. On December 28, 2015, he filed the first supplemental report from Dr. Zizic. Exhibit 44.

 Unfortunately, Mr. Bourche died on January 16, 2016, due to complications of his congestive heart failure.  Exhibit 45 (death certificate).  The representative of his estate, Mari Bourche, plans to continue the litigation.[4]  In this capacity, Ms. Bourche is expected to file an amended petition on June 13, 2016.  The forthcoming amended petition may or may not allege that the hepatitis B vaccination contributed to Mr. Bourche's death.

## II.   Analysis

Broadly speaking, resolving the pending motion for an award of attorneys' fees and costs on an interim basis requires consideration of three issues.  The first is whether the petitioner is eligible for attorneys' fees and costs.  If the petitioner is eligible, then the second issue is whether the petitioner should receive any

---

[4] Because Mr. Bourche's death, which happened after the briefing on the motion for an award of attorneys' fees and costs on an interim basis concluded, does not affect the outcome of the motion, this decision will continue to refer to Mr. Bourche as the petitioner.

attorneys' fees and costs at this time. The third question is, assuming that some award is appropriate, what constitutes a reasonable amount in this case.

### Whether the Petitioner's Case Satisfies the Requirements for an Award of Attorneys' Fees and Costs

Petitioners who have not yet been awarded compensation may be entitled to an award of attorneys' fees and costs when "the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa—15(e)(1). Here, the reports from Dr. Zizic satisfy the reasonable basis standard. In addition, Mr. Bourche brought his petition in good faith.

### Whether the Petitioner Should be Awarded Attorneys' Fees and Costs on an Interim Basis as a Matter of Discretion

After a finding of good faith and reasonable basis, the special master may exercise discretion in awarding attorneys' fees and costs on an interim basis. Rehn v. Sec'y of Health & Human Servs., 126 Fed. Cl. 86, 91 (2016) (citing Cloer v. Sec'y of Health & Human Servs., 675 F.3d 1358, 1362 (Fed. Cir. 2012) (en banc), aff'd, 133 S.Ct. 1886 (2012)); Friedman v. Sec'y of Health & Human Servs., 94 Fed. Cl. 323, 334 (2010) (ruling that special master acted within discretion in denying an award of attorneys' fees and costs on an interim basis). The Federal Circuit identified some factors for a special master to consider before awarding attorneys' fees and costs on an interim basis. These include: "protracted proceedings," "costly experts," and "undue hardship." Avera, 515 F.3d at 1352. This list is illustrative, not exhaustive.

Among the three listed factors, Mr. Bourche emphasizes "costly experts." Pet'r's Fee Appl'n at 7 ("the case involves costly expert testimony, and an award for interim fees is justified on this basis alone"). On its face, Dr. Zizic's invoice seeks payment for more than $40,000 (and this invoice does not include any time spent preparing the first supplemental report). The Secretary argues that the costliness of Dr. Zizic's work "is attributable to the excessive and unreasonable number of hours expended by the expert." Resp't's Resp. at 7-8; accord id. at 20-24 (discussing Dr. Zizic's work in more detail). While some of the more than 100 hours that Dr. Zizic invoiced for his first report are probably excessive, a more thorough assessment is deferred.

The next factor is "undue hardship." In Avera, the Federal Circuit did not clarify whether the hardship in waiting for a decision on attorneys' fees and costs

4

until after the merits resolve should fall on the petitioner, or the petitioner's attorney. See Avera, 515 F.3d at 1352. The Secretary has argued consistently that the petitioner (and not the petitioner's attorney) must suffer the "undue hardship." However, special masters have just as consistently rejected the Secretary's argument. Al-Uffi v. Sec'y of Health & Human Servs., No. 13-956V, 2015 WL 6181669, at *8 (Fed. Cl. Spec. Mstr. Sept. 30, 2015); Calise v. Sec'y of Health & Human Servs., No. 08-865V, 2011 WL 2444810, at *2-3 (Fed. Cl. Spec. Mstr. June 13, 2011); Dudash v. Sec'y of Health & Human Servs., No. 09-646V, 2011 WL 1598836, at *5 (Fed. Cl. Spec. Mstr. Apr. 7, 2011). One judge of the Court of Federal Claims recently agreed with the special masters that the burdened person may be the petitioner's attorney. Rehn, 126 Fed. Cl. at 94.

A conclusion that the petitioner's attorney qualifies as a burdened person does not end the analysis. The delay in payment must constitute a "hardship" and that hardship must be "undue." The Federal Circuit did not define either term. In the absence of further Federal Circuit guidance, other sources are consulted. One dictionary defines "hardship" as "extreme privation," and "undue" as "exceeding what is appropriate or normal; excessive." The American Heritage Dictionary 619, 1473 (3d ed. 1993).

More tangentially, the term "undue hardship" or something similar, appears in at least three statutes. First, a debtor seeking discharge of a student loan must show "undue hardship," 11 U.S.C. § 523(a)(8), and it has been interpreted in that context as requiring "privation beyond reasonable limits." In re Dufresne, 341 B.R. 391, 395 (D. Mass. 2006). Second, an alien may be entitled to suspension of deportation upon a showing of "extreme hardship," 8 U.S.C. § 1254(a)(1), and this term has been interpreted as requiring a showing of some hardship "beyond that which would normally be expected." Perez v. Immigration and Naturalization Service, 96 F.3d 390, 392 (9th Cir. 1996). Third, an employer may legally refrain from accommodating a disability when "the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(a). The Americans with Disability Act specifically defined "undue hardship" as "an action requiring significant difficulty or expense." 42 U.S.C. § 12111(10)(A).

These different sources point in the same direction: the "undue hardship" that a petitioner's attorney invokes to justify an award of attorneys' fees and costs on an interim basis must be an inconvenience greater than a delay associated with waiting for payment until the end expected in a routine case. If any delay in payment qualified as an undue hardship, then the factor would be meaningless.

In an attempt to establish that waiting until the end of Mr. Bourche's case would constitute an "undue hardship," Mr. Downing argues that "making Counsel wait years to receive any payments from the Program would have a chilling effect on competent Counsel being willing to represent Petitioners in the Program." Pet'r's Fee Appl'n at 8; accord Pet'r's Reply at 7.

The undersigned's observation is that, far from being chilled, attorneys' willingness to represent petitioners is increasing. This is demonstrated by increased petitions in the Vaccine Program. In 2013, 525 cases were filed. In 2014, 677 cases were filed. In 2015, 945 cases were filed. Of these 2015 cases, the petitioner appeared pro se in only 29 cases, or approximately 3 percent. This rate of pro se petitioners suggests — but does not prove — that people with colorable claims are finding attorneys to represent them.[5]

Also instructive is the lengthening of the list of attorneys willing to represent petitioners, which the Clerk's Office maintains. According to information from the Clerk's Office, in May 2014, the list contained 130 attorneys. In May 2016, 156 attorneys were listed. This 20 percent increase suggests — but, again, does not prove — that attorneys are willing to participate in the Vaccine Program. See Masias v. Sec'y of Health & Human Servs., No. 99-697V, 2009 WL 1838979, at *29 (Fed. Cl. Spec. Mstr. June 23, 2009) (relying upon different Clerk's Office data to show participation in the Vaccine Program is increasing), mot. for rev. den'd, (slip op. Dec. 10, 2009), aff'd, 634 F.3d 1283 (Fed. Cir. 2011).

While the system of compensating attorneys in the Vaccine Program could, as proposed by petitioner, be keeping attorneys out of the Vaccine Program, it seems more likely the converse is true. Data suggests that the Vaccine Program's compensation system, in which attorneys who represent unsuccessful litigants almost always are compensated for their reasonable work, is attracting significant quantities of quality attorneys to participate, not chilling their participation.[6]

Thus, in the absence of persuasive evidence that the current system is "chilling" attorneys' participation, the argument about "undue hardship"

---

[5] Some people could have valid claims but these people are neither finding attorneys to represent them nor finding the Vaccine Program to represent themselves. However, it is impossible to quantify this unknown.

[6] A petitioner who does not receive compensation is eligible for an award of attorneys' fees and costs upon a showing of good faith and reasonable basis. 42 U.S.C. § 300aa−15(e).

essentially boils down to delay. Delay, of course, closely relates to the remaining Avera factor, "protracted litigation." Here, the application for an award of attorneys' fees and costs collapses. The motion for an award of attorneys' fees and costs on an interim basis was filed less than one year after the petition was filed. Through the date of the motion, the litigation was smoothly proceeding along a relatively well trod path. It was not protracted.[7]

In support of an argument that less than one year of litigation can qualify as "protracted litigation," Mr. Bourche cites two cases. The first citation, Bear v. Sec'y of Health & Human Servs., No. 11-362V, 2013 WL 691963 (Fed. Cl. Spec. Mstr. Feb. 4, 2013), appears to be in error. That petition was filed on June 8, 2011, and the relevant motion was filed on September 13, 2012. Id. at *1. This means that the case "has been pending more than 19 months." Id. at *5.[8]

The second case, Becker v. Sec'y of Health & Human Servs., No. 13-687V, 2014 WL 4923160 (Fed. Cl. Spec. Mstr. Sept. 11, 2014), is on point to the extent that less than one year had elapsed between the filing of the petition and the filing of the motion for fees. However, Becker contains an additional factor, the withdrawal of an attorney, that is not present in Mr. Bourche's case.

In the absence of an attorney's motion to withdraw from a case, petitioners' attorneys usually file motions seeking an award of attorneys' fees and costs on an interim basis only after the case has been pending for multiple years. See Al-Uffi, 2015 WL 6181669, at *7-8. This practice is sound and comports with the spirit of Avera, which authorized interim awards in exceptional cases. See McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 301 (2011) ("we view Avera to mean that some special showing is necessary to warrant interim fees").

Whether a case is exceptional seems to depend upon what is expected. The Vaccine Program, as mentioned previously, has received a sharp increase in the number of cases. Concomitantly, the Department of Justice is no longer participating in the process of resolving disputes involving attorneys' fees and costs as it once did, see Dorego v. Sec'y of Health & Human Servs., No. 14-337V, 2016 WL 1635826 (Fed. Cl. Spec. Mstr. Apr. 4, 2016), effectively increasing a

---

[7] After Mr. Bourche filed the pending motion, he died. His death has caused approximately six months of additional time as Dr. Zizic considers whether the hepatitis B vaccine contributed to his death. Once the petitioner obtains this opinion from Dr. Zizic, the case will return to the typical path.

[8] In addition, the petitioner's attorney was requesting an award on an interim basis before withdrawing from the case.

7

special master's engagement in the process of determining a reasonable amount of attorneys' fees and costs. Due to statutory and budgetary restrictions, judicial resources at the Office of Special Masters have not kept pace with these surges.

Judicial officers are afforded great discretion in managing their dockets. Landis v. North Am. Co., 299 U.S. 248, 254 (1936); Amado v. Microsoft Corp., 517 F.3d 1353, 1358 (Fed. Cir. 2008). By necessity, they must balance the needs of litigants competing for their attention. In choosing to resolve one case, the judicial officer is implicitly deciding not to decide another case.

Here, the undersigned could have left the motion pending, which would be like denying the motion. However, the undersigned has opted to act on the motion explicitly for two reasons. First, the undersigned's resolution of the motion provides a basis on which Mr. Bourche could file a motion for review. See Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372, 1376 (Fed. Cir. 2010). Second, the undersigned wishes to advise attorneys representing petitioners in future cases that they need to justify an interim award with more than a conclusory argument that they are entitled to such an award. More than four years ago, the undersigned anticipated that interim awards would be the rule, not the exception. See Hibbard v. Sec'y of Health & Human Servs., No. 07-446V, 2011 WL 1135894 (Fed. Cl. Spec. Mstr. Mar. 7, 2011). The ensuing four years of experience, a period in which Vaccine Program cases have increased dramatically, has led to a reconsideration of this view. Interim awards remain appropriate in some cases, but interim awards should not be requested routinely.

For these reasons, the undersigned declines to exercise discretion to award Mr. Bourche his reasonable attorneys' fees and costs on an interim basis. If Mr. Bourche's case becomes unexpectedly prolonged, Mr. Bourche is encouraged to request a status conference to discuss whether he should file another motion. Given this resolution, determining a reasonable amount of attorneys' fees and costs is not necessary.

## III.    Conclusion

The November 15, 2015 motion for an award of attorneys' fees and costs on an interim basis is DENIED.  At a later time, Mr. Bourche may file another motion for attorneys' fees and costs that encompasses the amounts previously requested.

**IT IS SO ORDERED.**

s/ Christian J. Moran
Christian J. Moran
Special Master
